## Nels Herman, Appellee, v. C. C. Wroughton, Appellant.

## Gen. No. 4,936.

VERDICT—*when not disturbed as against the evidence.* Where a controversy is purely one of fact and the evidence is conflicting, a verdict will not be disturbed in the absence of a clear preponderance against the verdict, where the jury and trial judge have seen and heard the witnesses.

Assumpsit. Appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed March 11, 1908.

J. C. MURPHY and B. P. ALSCHULER, for appellant.

N. J. ALDRICH, THEODORE WORCESTER and F. W. HARTSBURG, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellant received $1,000 from commissions paid for the sale of a farm. Appellee claimed that by an agreement between them appellant was to divide said commissions with him. Appellant refused to recognize the claim or divide said sum with appellee. Appellee sued appellant therefor, and had a verdict and a judgment for $500 from which defendant below appeals.

Appellee is a real estate and fire insurance agent at Batavia. Appellant is a life insurance agent at Aurora. Mary M. Crego had a farm of 317 acres near North Aurora which she wished to sell so as to realize from it $110 per acre for herself. Her sons assisted and acted for her with her approval. One of them placed the farm in the hands of appellant for sale. Appellant and appellee were acquainted and had theretofore dealt with each other. They had a conversation about the sale of this farm. Appellee testified that appellant told him the size of the farm and that he had it for sale, and if it could be sold at $115 per acre a commission of $5

per acre could be made; that he was not in the real estate business, and that he wanted appellee's assistance in selling the farm; and that if appellee would assist him in selling it, they would divide the commissions, no matter which of them found the purchaser. Appellee replied that he would accept the proposition and do all he could. He took various steps towards selling the land, not necessary to be here stated, but he did not find the purchaser who afterwards bought it. Appellant testified that he told appellee that if appellee found a purchaser he would divide the commissions with appellee. Appellant argues here that the latter is the more reasonable and probable version of the contract. But there was testimony by several witnesses that after the farm was sold appellant requested the parties not to tell appellee, as, if appellee found it out, appellant would have to divide commissions with appellee, or would have to pay appellee half the commissions, or that appellee would want half the commissions. This tended to support appellee's version of the contract.

Some time after the contract between appellant and appellee the Cregos gave M. E. Wolf an exclusive option to sell the farm for two months. Appellant told appellee of this. They differ as to the conversation then had. According to appellant what they then said indicated that that option put an end to their contract. According to appellee, appellant said that in the meantime they would keep an eye on buyers and when that option expired they would go to work and sell the farm if they could. Appellant contends that whatever was said, the effect of that option was to put an end to the contract between appellant and appellee. We are of opinion that that result did not necessarily follow. Whether that option ended or suspended appellant's contract with the Cregos is immaterial, for appellee was not a party to that contract. The contract here sued upon was between appellant and appellee, and there is no preponderance of proof that they intended that their contract was thereby ended.

Afterwards one Warren, an agent of the same life insurance company as appellant, and whose office was in a room next to appellant's office, got written authority from Mrs. Crego to sell the farm. Appellant went to Mrs. Crego the same day and had his name inserted with Warren's name in the contract. A purchaser was produced whom Warren apparently found. Appellant and Warren went with this man to the farm, and he bought it for $115 per acre. Appellant took the leading part in the negotiations. Mrs. Crego was allowed $185 of the commissions with which to settle with Wolf. That left $1,400 of commissions. Mrs. Crego's son afterwards paid $160 of the commissions to a trustee in bankruptcy afterwards appointed for Warren. Appellant received and retained $1,000 of the commissions. Appellant's testimony was that Warren alone sold the farm, and that all the commissions belonged to Warren; that Warren owed appellant $1,000 and he had his name inserted in that contract to enable him to collect that debt; and that he received the $1,000 not as commissions due to himself, but by assignment or transfer from Warren in payment of said debt. If the jury had so found, it may well be that such a verdict could not have been disturbed here; but there were a number of circumstances tending to show that Warren was brought in as a device to avoid a division of the commissions with appellee. The facts that Warren was a life insurance agent for the same company as appellant, that they occupied adjoining offices, that appellant took the leading part in conducting the sale, that appellant made the request that appellee be not informed of the sale, and what he said to the parties about having to divide commissions with appellee if appellee learned of the sale (which statement appellant did not deny making), that the Cregos evidently understood that appellant was receiving commissions for his own services, and other circumstances in proof, all taken together made such a case that a conclusion by the jury favorable to appellee, approved by the trial

judge, cannot be said by this court to be without the support of the greater weight of the evidence. It is true that what appellee did towards finding a buyer does not seem to have aided in finding the party who actually purchased, but if his version of the contract is true, his right to half the commissions did not depend upon that consideration. He did find a prospective purchaser and take him over the farm, and explain its merits, and if that man had bought, appellant would have been entitled to half the commissions without having done anything which aided in finding the purchaser. If appellant and appellee made such a contract with each other, there is no reason why the courts should not enforce it.

The controversy is purely one of fact for the jury upon the conflicting testimony of witnesses who were seen upon the stand by the jury and the trial judge. We ought not to disturb their conclusion. The judgment is therefore affirmed.

*Affirmed.*

Mr. Presiding Justice WILLIS having presided at the trial of this case in the lower court, took no part in its decision here.